(No. 19245.—

THE FEDERAL MOTOR TRUCK COMPANY, Defendant in Error, *vs.* E. L. COOK, Plaintiff in Error.

*Opinion filed June 19, 1929.*

RATHJE, WESEMANN, HINCKLEY & BARNARD, (FRANCIS E. HINCKLEY, of counsel,) for plaintiff in error.

JOHN M. ZANE, and HAROLD W. NORMAN, for defendant in error.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an action on a written guaranty entered into between plaintiff in error and defendant in error. By it plaintiff in error guaranteed to defendant in error, the Federal Motor Truck Company, a Michigan corporation, (hereinafter designated the Michigan Company,) the payment, up to $20,000, of any moneys due or to become due from

the Federal Motor Truck Company, an Illinois corporation, (hereinafter designated the Illinois Company,) "for the purchase of trucks and the performance of all contracts, promises, agreements, understandings and obligations now existing or to exist in the future between the Federal Motor Truck Company of Detroit, a Michigan corporation, and the Federal Motor Truck Company of Illinois, an Illinois corporation, pertaining to the purchase and sale of trucks and the return of all trucks now in the possession of, or which may in the future be in the possession of or under the control of, said Federal Motor Truck Company, an Illinois corporation, belonging to the Federal Motor Truck Company, a Michigan corporation." It was also provided that the guaranty, "except as herein otherwise specifically provided, is absolute, unlimited and continuing until one calendar month after notice in writing to determine or discontinue the same shall be given by the undersigned." The guaranty excluded from its operation the parts account of the Illinois Company with the Michigan Company.

The declaration charged that defendant in error sold to the Illinois Company certain motor trucks, amounting in all to $16,249.70; that the Illinois Company had paid on that amount $13,725.72, leaving a balance of $2523.98, with interest. Plaintiff in error filed a plea of non-assumpsit, and by an amended affidavit of merits admits the execution of the contract of guaranty but sets out that four certain trucks, enumerated in the affidavit of claim as No. 29232-33-34 and 35, were not sold to or purchased by the Illinois Company but were consigned to it for disposition; that in the disposition of these trucks the Illinois Company was a factor for the plaintiff and not a purchaser of the trucks; that upon the sale of these trucks the purchaser was to give his notes secured by mortgages, and the notes to be delivered by the Illinois Company to Farmer & Ochs, Inc., a banking firm of the city of New York, who were financing the purchase, and that the latter were to discount the notes

and remit the proceeds thereof direct to the plaintiff, which was done, and that by reason of this transaction no liability accrued against the Illinois Company, and therefore none against plaintiff in error, its guarantor. A further item included in the affidavit of· claim was a balance of $340 claimed to be due for truck No. 26241. As to this item the amended affidavit of merits sets out that the same had been paid by mailing to defendant in error a certificate of deposit representing a certain amount of the reserve kept out by Farmer & Ochs in the sum of $680, together with a check of the Illinois Company for the balance of the purchase price of the truck.

A hearing of the cause was held before the court without a jury. At the close of the evidence the plaintiff submitted propositions of law, which were refused, and the court found the issues for plaintiff in error. On appeal to the Appellate Court the judgment of the circuit court was reversed and judgment entered for defendant in error in the amount of its claim, and the Appellate Court made a finding of the ultimate facts. Plaintiff in error, however, contends that there was no dispute as to the facts, and that therefore it was error for the Appellate Court to make a finding of fact; that the finding was in reality one of law. Defendant in error replies that there was a dispute in the facts, and that under section 122 of the Practice act an assignment of error calling in question the determination of the Appellate Court on controverted questions of fact is not allowed.

Whether the evidence upon which the finding of fact was based was controverted or undisputed can be determined only by a complete examination of the record. Certain facts are uncontroverted. They are, aside from the fact of the contract of guaranty hereinbefore mentioned, as follows: A sales agreement existed between the Michigan Company and the Illinois Company, by which the former agreed to supply to the latter, as distributor, trucks manu-

factured by the Michigan Company at prices of from twenty-five per cent to thirty per cent reduction from the list prices, as specified in the contract. The Illinois Company agreed to take one hundred trucks during the life of the contract, in the quantities and at the times specified. The terms were to be f.o.b. Detroit, draft against the bill of lading payable upon arrival of the shipment. It was also provided that with the purchase of each truck, a deposit of $100 was to be made by the Illinois Company, which deposit should be deducted from the net price of the truck as evidenced by the draft. Other provisions with reference to insurance, shortage claims, co-operation, report on sales, etc., were included. It was also provided in the agreement that the Illinois Company was not to transact business, express or implied, or bill goods in the name or for the account of the Michigan Company nor in its behalf, nor to make any promise, warranty or representation with respect to goods or to any other matter. It was specifically stated that the distributor is in no way the legal representative of the Michigan Company or its agent, and that it is agreed that the Michigan Company shall not be bound by the acts of the distributor. This contract, after its expiration on December 31, 1922, was renewed, and at the time of the purchase of the trucks involved in this case was in effect.

It also appears that an arrangement had been negotiated by the Michigan Company with Farmer & Ochs, Inc., that the New York concern would handle the retail paper of the distributors of the Michigan Company, so that the distributor, when a truck was sold on time, could send the paper of the purchaser to Farmer & Ochs, together with certain proof as to reliability of the purchaser and matters required under the arrangement, and receive at once from Farmer & Ochs ninety per cent of the total of the notes, less certain costs, surety bond and insurance premiums which were retained by the New York bankers. In lieu of the ten per cent of the total of the notes Farmer & Ochs were

to send to the distributor a certificate of deposit, which was not payable until the entire loan was liquidated, when, upon surrender of the certificate of deposit to Farmer & Ochs, the amount would be paid. This enabled the dealer to realize on the sale of the truck at once, without the necessity of having large sums of money tied up in the business. In this way a considerable amount of business was transacted between defendant in error and the Illinois Company. Plaintiff in error, Cook, was president of the Illinois Company, and during the period of May, June and July in 1923 the Illinois Company became somewhat involved in its sales business. At about that time, however, they had an application for the purchase of four trucks by the Barrett Company, but the Illinois Company was not in a position to advance the amount necessary to purchase the trucks from the Michigan Company and plaintiff in error did not care to invest the amount required, and through a representative of defendant in error a plan was worked out under which the trucks were to be sent to the city of Chicago and when fitted with bodies and hoists by the Illinois Company at its expense, were to be then turned over to Barrett, and his notes for the unpaid purchase price were to be sent to Farmer & Ochs, with directions to send the proceeds, when collected, to defendant in error instead of the Illinois Company. The four trucks were sent to one Wells, a representative of the Michigan Company. They were equipped with bodies and hoists by the Illinois Company and turned over to Barrett, who gave his notes for the unpaid part of the purchase price. These notes were sent to Farmer & Ochs, with directions to send the proceeds thereof to the Michigan Company. Concerning this transaction the Michigan Company wrote Farmer & Ochs, telling them that they had an understanding with Mr. E. L. Cook, of the Federal Motor Truck Company of Illinois, that the entire proceeds of the purchase of this paper be remitted direct to it at Detroit, the letter further stating: "We will thank

you to handle the remittance for the retail paper in this way if it conforms to your instructions from the Federal Motor Truck Company of Illinois, but in the event that instructions received from them are not in accordance with this letter, you will please advise us at once and wait our further instruction before remitting." Two of the four trucks were sold to Barrett at the price of $3975 each and two at the price of $3950 each. It appears that instead of reserving ten per cent, to be represented by certificates of deposit, Farmer & Ochs deducted twenty per cent of the sales price and sent the balance to the Michigan Company as to three of the trucks. From the notes representing the sale price of the fourth truck they deducted the sum of $2000 and interest, claiming that there was due them from the Illinois Company that amount on a truck sold to one Tobler, whose notes they had for collection from the Illinois Company but who claimed that he had paid the cash to the Illinois Company. There were six certificates of deposit, representing reserves on the four trucks. Two of the trucks were represented by one certificate, each of the amount of $790, and two trucks were represented by two certificates each. These four certificates were each for $397.50, so that as to each of two of these trucks Farmer & Ochs had reserved from the proceeds sent the Michigan Company the sum of $790 and as to each of the other two the sum of $795. As to what was done with these certificates of deposit the testimony is contradictory.

Plaintiff in error contends that these facts show that the Illinois Company was a factor and that there was no sale of the trucks to the Illinois Company; that they were to receive no benefit other than as an agent; that the only benefit they were to derive from the proceeds of the Barrett notes was what was left after the purchase price of the trucks and the expense of financing had been taken out, which under their agreement was to be applied to the open account of the Illinois Company with defendant in error.

Defendant in error, on the other hand, contends, and the Appellate Court held, that the transaction regarding the Barrett trucks was a purchase and sale transaction and that it differed from other transactions only as to the method of payment, and that Farmer & Ochs, in making these collections of the notes and in withholding $2000 on the Tobler transaction, was not acting as the agent of the Michigan Company. If the record were free from dispute as to facts pertaining to the relations of the parties in the Barrett transaction, as shown by their correspondence and agreements, it might well be said that the construction of the evidence would be one of law, but the record is not so free.

One C. A. Rogers, treasurer of the Michigan Company, testified that he first saw the six certificates of deposit representing the reserves held back by Farmer & Ochs on the paper of the four Barrett trucks, in the office of plaintiff in error in November, 1923, more than four months after the sale of the trucks; that he took three of them in payment on the trucks, but was not willing to take more than three because under the course of dealing between the parties the Michigan Company was required to take commercial paper to the extent of ten per cent, only; that he took one certificate of deposit of the amount of $790 and two of the amount of $397.50 each; that in rendering the account to the Illinois Company credit was given for these three certificates which he took. The effect of his testimony was that Farmer & Ochs had sent the certificates of deposit to the Illinois Company, as was done in other transactions of that character. Rogers testified, also, that the Michigan Company did not receive these certificates of deposit from Farmer & Ochs or from any other source but that he first saw them all in Cook's office when he accepted three of them as stated.

Plaintiff in error, Cook, testified that he did not receive the receipts for certificates of deposit from Farmer & Ochs, but that when Rogers called at his office in November, 1923,

he had the six certificates with him and wanted him, Cook, to hold three of them, giving the Michigan Company the cash therefor, but that he, Cook, had refused to do so because he said the Illinois Company was not receiving any of the proceeds of the Barrett paper. He, however, stated that Rogers left three of them with the treasurer of the Illinois Company, taking her receipt therefor. This was clearly a controverted question of fact on a very vital part of the evidence, as it concerned the issue whether the Barrett transaction was a consignment, in which the Illinois Company acted only as factor, or whether it was a sales contract, which would come under plaintiff in error's contract of guaranty. If it was a consignment deal throughout, it was but natural that the Michigan Company should receive these certificates of deposit, as Cook testified they did. If it was a purchase and sale contract it was not unusual that the certificate of deposit be sent to the Illinois Company, as Rogers testified he found them. There being controverted evidence upon which the finding of ultimate facts is based, this court is not authorized to consider any assignments of error based on that finding of fact.

The only other assignments of error are, that the Appellate Court erred in entering judgment and in failing to affirm the judgment. It is argued, however, by plaintiff in error, that as to one item in the statement of account, amounting to $340, the Appellate Court erred in its ruling on the law. This item relates to truck No. 26241, sold to the Illinois Company, for which there was charged the sum of $1588.68, and the statement of claim shows that there was paid thereon $1248.68, leaving a balance of $340. As to this item plaintiff in error claims payment in full on the following facts: In paying for this truck the Illinois Company sent to defendant in error a certificate of deposit in the sum of $680, which certificate represented twenty per cent of the sales price instead of ten per cent, as was usually deducted on reserve. In addition, the Illinois Company sent

to defendant in error its check for the balance over and above the sum of $680. Defendant in error objected to giving credit for the sum of $680 but in its letter called attention to the terms of the agreement by which it was required to give credit only for ten per cent, and stated that it was not willing to use this certificate of deposit, which was commercial paper, for payment of any greater amount than ten per cent, and requested that the Illinois Company send to it $340, stating that if and when the certificate of deposit was paid the Michigan Company would reimburse the Illinois Company. The Michigan Company retained the certificate of deposit, and plaintiff in error contends that this was an accord and satisfaction of the entire amount due on that truck; that defendant in error is not entitled to judgment for the sum of $340, and since the Appellate Court included that sum in the judgment rendered, its judgment was to that extent erroneous. The matter of this certificate of deposit and the question whether it should be taken as payment in full for the balance of the purchase price of the truck was involved in the question as to what, if anything, was due from plaintiff in error to defendant in error. The finding of fact was that a certain amount was due. That finding was based upon a mixed question of law and fact, and as to such questions the findings of the Appellate Court are conclusive and not subject to review by this court. *Navratel* v. *Curtis Door and Sash Co.* 290 Ill. 526; *McGovney* v. *Village of Melrose Park,* 241 id. 142; *Roemheld* v. *City of Chicago,* 231 id. 467.

Since the Appellate Court found on a mixed question of law and fact that a certain sum was due defendant in error on the account stated, it necessarily follows that the judgment must be affirmed.     *Judgment affirmed.*